United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

B.T.N.,

Plaintiff,

v.

COMMISSIONER SSA,

Defendant.

Case No. 25-cv-09046-LB

**ORDER AFFIRMING COMMISSIONER'S FINAL DECISION; DENYING REQUEST FOR REMAND**

Re: ECF Nos. 9, 11

## INTRODUCTION

The plaintiff applied for Social Security disability-insurance benefits after he stopped working as a software engineer in January 2020. He returned to the same occupation on July 1, 2022, and he now claims a closed period of disability from January 11, 2020, to the end of June 2022.[1] This is the case's second round of judicial review: after the parties stipulated to a remand of a first ALJ decision, a second ALJ held a new hearing and again denied benefits, this time adjudicating the entire period through the date of her decision. The plaintiff contends that the ALJ improperly

[1] AR 557, 559, 585. Citations are to the administrative record (AR), lodged at ECF No. 8, by its internal pagination, and otherwise to the Electronic Case File (ECF); pinpoint citations to ECF filings are to the ECF-generated page numbers at the top of documents. The Commissioner's brief cites the record as "Tr."; the pagination is the same. The 2024 ALJ decision is at AR 554–79 (rationale at AR 557–73), the 2024 hearing transcript is at AR 580–607, and the first (vacated) ALJ decision is at AR 21–37.

evaluated the medical-opinion evidence about his left (non-dominant) hand and failed to adjudicate the closed period, and he asks the court to credit the opinion evidence and remand for an award of benefits or, alternatively, for further proceedings. The Commissioner defends the ALJ's decision.[2]

The issues are narrow because the vocational framework is not disputed. The plaintiff was sixty at his alleged onset date, his past work as a software engineer was skilled and sedentary, and the vocational expert testified that a limitation to occasional operation of left-hand controls would preclude that work and that the plaintiff's skills would not transfer to other work because they "would still require constant keyboarding."[3] On those facts, if the plaintiff could not perform his past work, Medical-Vocational Rule 202.06 would direct a finding of disability, a consequence the Commissioner does not dispute.[4] Every physician who assessed the plaintiff's left-hand function found limits beyond those in the residual-functional capacity the ALJ assessed. The consultative examiner, Dr. Kenny, limited the plaintiff to occasional handling and no fingering or feeling with the left hand. The state-agency consultants, Drs. Leu and Lee, limited him to occasional operation of left-hand controls. The treating physician, Dr. Luu, opined that he could not do repetitive computer work. The ALJ found each of those limitations unpersuasive and found the plaintiff able to perform his past work as generally performed, and thus not disabled at any time from January 11, 2020, through the date of the decision.[5]

The court affirms. The ALJ's written decision engages the evidence the plaintiff says it ignored: it acknowledges his continuing symptom reports to Dr. Luu and explains why it discounted them, resolves the conflict between those reports and his denials of symptoms in his

---

[2] Pl.'s Br. – ECF No. 9 at 4–15; Comm'r's Br. – ECF No. 11 at 2–8. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c). Consents – ECF Nos. 4–5. Under Civil Local Rule 16-5 and the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), the action is submitted for decision on the briefs without oral argument. No reply brief was filed.

[3] AR 229, 270–71, 601–03; Pl.'s Br. – ECF No. 9 at 4–5, 5 n.1.

[4] 20 C.F.R. § 404.1563(e); 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06; Pl.'s Br. – ECF No. 9 at 5 & n.1; *see generally* Comm'r's Br. – ECF No. 11 (defending the ALJ's rejection of the underlying limitations, not the grid mechanics).

[5] AR 565, 568–73.

United States District Court
Northern District of California

other treatment, addresses the imaging, and explains (with the supportability and consistency articulation the regulations require) why the record did not support projecting the disputed hand limitations across the claimed period. Substantial evidence supports those findings, and the court may not reweigh the evidence. The separate challenge to the ALJ's evaluation of Dr. Kenny's opinion fails for the additional reason that the plaintiff did not contest the ALJ's reliance on his return to the same job (one he described as requiring constant typing) without evidence of intervening treatment. And the closed-period argument fails because the ALJ expressly adjudicated the entire period and found no disability at any time within it. The court affirms the Commissioner's final decision.

## STATEMENT

### 1. Procedural History

The plaintiff applied for a period of disability and disability-insurance benefits on January 6, 2021, alleging an onset date of January 11, 2020.[6] The Commissioner denied the claim initially on June 16, 2021, and on reconsideration on September 16, 2021.[7] An ALJ held a telephonic hearing on March 30, 2022, and issued a decision denying the claim on May 6, 2022.[8] The Appeals Council denied review, and the plaintiff sought judicial review in this district; on September 14, 2023, the court approved the parties' stipulation to remand the case for further administrative proceedings.[9] On March 29, 2024, the Appeals Council remanded the case to an ALJ for further consideration of the plaintiff's maximum residual functional capacity during the entire period at issue (including further evaluation of Dr. Kenny's opinion) with instructions to support the assessed limitations with specific record references and, if warranted, to obtain vocational-expert evidence.[10]

---

[6] AR 229–30, 557, 573.

[7] AR 113–16, 131–35, 574 (Exs. 2A, 4A).

[8] AR 21–75. The plaintiff cites the first decision as AR 18–41; the decision itself is paginated AR 21–37.

[9] AR 646–48, 574 (Exs. 6A, 8A); *BTN v. Kijakazi*, No. 3:23-cv-00728-TSH (N.D. Cal.).

[10] AR 543, 557, 574 (Ex. 10A).

On remand, a different ALJ held a telephonic hearing on August 27, 2024, and took testimony from the plaintiff and a vocational expert, Doug Lear.[11] By then, the plaintiff had returned to his past work, and his counsel confirmed that he sought to amend the claim to a closed period of disability ending June 30, 2022. The ALJ acknowledged the amendment but adjudicated "the entire period through the date of this decision."[12] The ALJ issued a decision denying the claim on September 27, 2024.[13] The plaintiff filed exceptions dated October 25, 2024, and on September 12, 2025, the Appeals Council declined to assume jurisdiction, making the ALJ's decision the Commissioner's final decision.[14] The plaintiff timely sought review in this court, which has jurisdiction under 42 U.S.C. § 405(g).

## 2. The Opinion Evidence and the Vocational Expert's Testimony

### 2.1 The Consultative Examiner (Dr. Kenny)

Katherine Kenny, M.D., examined the plaintiff on April 22, 2021. She recorded difficulty manipulating a pen with the left hand (though he did not drop it), a positive Tinel's sign on the left, decreased left-upper-extremity strength (2/5 to 4/5), two centimeters of atrophy in the left biceps, and decreased sensation over the palmar surface of the left second through fourth fingers. The plaintiff told her that despite his pain and conditions, "he continues to apply for jobs."[15] She opined, among other things, that the plaintiff could stand or walk up to two hours in an eight-hour workday, push or pull up to ten pounds, occasionally handle with the left hand, and never finger or feel with the left hand.[16]

[11] AR 557, 580–607.

[12] AR 557, 585.

[13] AR 554–79.

[14] AR 543–48, 779.

[15] AR 435–37, 439, 566–67 (decision, describing Ex. 5F/2–5).

[16] AR 440, 570.

United States District Court
Northern District of California

### 2.2 The Treating Physician (Dr. Luu)

James Luu, M.D., was the plaintiff's primary-care physician. A cervical-spine x-ray taken in July 2020 showed degenerative changes and encroachment on the neural foramina, and Dr. Luu related those findings to the plaintiff's left-arm symptoms.[17] In letters dated March 29, 2021, and August 2021, Dr. Luu recounted positive Phalen's and Tinel's signs and opined (among more extensive sitting, standing, lifting, postural, manipulative, and mental limitations) that the plaintiff could not do repetitive computer work and could only occasionally reach, handle, or finger.[18] Dr. Luu's notes record left-arm complaints at visits on May 31 and August 3, 2021, symptoms of left carpal-tunnel syndrome on October 2, 2021, and neck symptoms on February 4 and April 2, 2022.[19] An undated progress note records positive Tinel's and Phalen's signs in both wrists; the plaintiff dates the note to July 10, 2020, and the Commissioner responds that it is undated.[20]

### 2.3 The State-Agency Consultants (Drs. Leu and Lee)

G. Leu, M.D., reviewed the record at the initial level and found that the plaintiff could perform light work with, as relevant here, occasional operation of hand controls with the left upper extremity and frequent handling, fingering, and feeling with the left hand. S. Lee, M.D., concurred on reconsideration.[21]

### 2.4 The Vocational Expert and the Grids

At the 2024 hearing, the vocational expert classified the past work as software engineer, DOT 030.062-010, sedentary and skilled (SVP 8). For the ALJ's first hypothetical (which matched the residual functional capacity the ALJ later assessed), the expert testified that the past work would remain available as generally performed because "[t]he DOT defines fingering as frequent," but

---

[17] AR 416, 430, 446, 460 (as described at Pl.'s Br. – ECF No. 9 at 7–8).

[18] AR 416, 446, 570–72 (decision, describing Exs. 4F/1–2, 7F/1–2). The plaintiff dates the second letter August 21, 2021; the decision dates it August 27, 2021, which is the date reflected on Ex. 7F. AR 446.

[19] AR 446, 448, 541, 866 (as described at Pl.'s Br. – ECF No. 9 at 7).

[20] AR 421; Pl.'s Br. – ECF No. 9 at 8; Comm'r's Br. – ECF No. 11 at 3; *accord* AR 24 (first ALJ decision, describing the note as undated).

[21] AR 87–90, 105–08, 569 (decision, describing Exs. 1A/12–15, 3A/11–15).

not as actually performed, because the plaintiff performed fingering "on a constant basis."[22] For the second hypothetical, which added occasional operation of left-hand controls, the expert testified that a keyboard and mouse "can be defined as hand controls," that the past work could not be performed, and that the plaintiff had no transferable skills because "all skills would still require constant keyboarding."[23] The expert testified that Dr. Kenny's manipulative limitations (occasional left handling and no left fingering or feeling) would likewise preclude the past work and leave no transferable skills.[24] The plaintiff (born in July 1959) was sixty at the alleged onset date and has a college education. He contends, and the Commissioner does not dispute, that if he cannot perform his past work and has no transferable skills, Medical-Vocational Rule 202.06 directs a finding of disability.[25]

### 3. The ALJ's Decision

The ALJ followed the five-step sequential evaluation. At step one, she found that the plaintiff engaged in substantial gainful activity from July 1, 2022, forward (he returned to "the exact same job he was doing before as a software engineer," earning about $206,000 a year) but that there was a continuous twelve-month period without such activity, which the remaining findings addressed.[26] At step two, she found severe impairments of degenerative disc disease of the lumbar and cervical spine, obesity, osteoarthritis of the left shoulder and knees, and diabetes mellitus with neuropathy, and at step three, no impairment that met or equaled a listing.[27] She assessed a residual functional capacity for light work with postural limitations, no work at unprotected heights, and (as relevant here) frequent overhead reaching with the left upper extremity and

[22] AR 601–02.

[23] AR 602–03, 605.

[24] AR 604.

[25] AR 229, 270; Pl.'s Br. – ECF No. 9 at 4–5, 5 n.1; 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06.

[26] AR 559–60.

[27] AR 560, 564–65.

frequent handling, fingering, and feeling with the left hand. The capacity includes no restriction on the operation of hand controls.[28]

In the symptom-evaluation discussion that preceded her opinion analysis, the ALJ recounted the medical record in detail. She observed that the plaintiff had positive Tinel's and Phalen's signs in March 2021 and at Dr. Kenny's April 2021 examination ("some findings for about three months in 2021") but that after the examination, he denied numbness and weakness at five visits between March 2021 and January 2022, had "little evidence of any continuing hand complaints, let alone continuing findings," and made no mention of musculoskeletal symptoms at his Valley Health appointments.[29] She acknowledged that the plaintiff "continued to report pain to Dr. Luu, with little evidence of objective findings into early 2022," and found that "his reports between clinicians were inconsistent, with no mention of musculoskeletal symptoms at Valley Health and only vague mentions and little in the way of findings with Dr. Luu."[30] She characterized the imaging (shoulder, knee, lumbar, and cervical) as showing mild or mild-to-moderate degenerative findings, noted the plaintiff's confirmed improvement with exercise, and observed that he "has since returned to the same occupation, which involved frequent use of his upper extremities, consistent with the above limitations."[31]

The ALJ then evaluated the opinion evidence. She found the state-agency consultants' findings persuasive in the main and adopted them into the residual functional capacity, but she rejected two components. The push-pull limitation was "somewhat supported by a recitation to the consultative examination findings, including noted atrophy," but inconsistent with the lack of atrophy or gait findings elsewhere and with the plaintiff's confirmed improvement. The hand-control limitation, "while again somewhat supported by a recitation to the consultative examination . . . and the short

[28] AR 565. The first ALJ decision, vacated on the stipulated remand, had limited the plaintiff to occasional operation of hand controls with the left upper extremity. AR 29–30.

[29] AR 566–68 (citing Exs. 4F/1, 6; 5F/5; 8F/18, 28, 47, 56, 62). The Commissioner identifies the five visits as AR 482, 492, 511, 520, and 526 — January 2022 and September, May, April, and March 2021 — and the parties agree they were for conditions such as diabetes, hypertension, and dyspepsia. Comm'r's Br. – ECF No. 11 at 3; Pl.'s Br. – ECF No. 9 at 7–8.

[30] AR 567–68 (citing Exs. 4F, 8F, 11F).

[31] *Id.* (citing Exs. 1F/9; 3F/16–18; 4F/10, 11).

lived positive Tinel's/Phalen's findings," was rejected because "as noted above, these did not persist even a full 12 months and he had little in the way of even continued subjective complaints, let alone objective findings."[32] She found Dr. Kenny's opinion "persuasive only in part": she adopted the postural, lift-carry, and left-overhead-reach limitations, but found that the stand-walk, push-pull, and left-hand manipulative limitations, though "somewhat supported" by the examination findings, reflected a "degree of limitation [that] is not consistent with the record as a whole," pointing to the short-lived findings, the later denials, the paucity of continuing hand complaints, and the fact that the plaintiff "has since returned to the same occupation, which involved frequent use of his upper extremities."[33] She found Dr. Luu's opinions not persuasive, explaining among other things that the manipulative and typing restrictions were not supported by examination findings, that the positive signs Dr. Luu noted in early 2021 "did not appear to persist even after early 2021 and the consultative examination," that the plaintiff "denied numbness during treatment outside of the visits with Dr. Luu," and that "despite little evidence of intervening treatments, he returned to the same type of work which he self-described as requiring constant typing."[34] At step four, crediting the vocational expert's testimony (including the expert's explanation that although the DOT does not differentiate between extremities, "even the unilateral limitations remained consistent with how the job was performed per the DOT"), the ALJ found the plaintiff able to perform his past relevant work as a software engineer as generally performed, and therefore not disabled from January 11, 2020, through the date of the decision.[35]

---

[32] AR 568–69 (citing Exs. 2F/3; 3F/9; 4F/1, 6; 5F/4–5).

[33] AR 569–70.

[34] AR 570–71 (citing Exs. 4F/1; 7F/3; 8F/18, 28, 47, 56, 62; 9F/2; 11F/3).

[35] AR 572–73; *see* AR 601–02, 605 (vocational-expert testimony and DOT-consistency confirmation).

## LEGAL STANDARDS

### 1. Standard of Review

Under 42 U.S.C. § 405(g), the court may set aside the Commissioner's denial of benefits only if the ALJ's findings are not supported by substantial evidence or rest on legal error.[36] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion: more than a mere scintilla, but less than a preponderance.[37] The court reviews the record as a whole and the ALJ's decision as a whole; it does not confine its reading to isolated passages, and the ALJ need not discuss every piece of evidence.[38] Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion; it may not reweigh the evidence or substitute its judgment.[39] The court reviews the reasons the ALJ asserted and may not affirm on a ground the ALJ did not invoke.[40] An error is harmless if it is inconsequential to the ultimate nondisability determination.[41]

### 2. Disability, Duration, and Closed Periods

Disability means the inability to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months.[42] Benefits are not all or nothing: they may be awarded for a closed period that has both a beginning and an end, but the period of disability must itself satisfy the twelve-month duration requirement.[43] The ALJ applies a five-step sequential evaluation,

---

[36] 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

[37] *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019); *Ford*, 950 F.3d at 1154.

[38] *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

[39] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987).

[40] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

[41] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds*.

[42] 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509.

[43] *Attmore v. Colvin*, 827 F.3d 872, 873–74 (9th Cir. 2016); *Van Horn v. Heckler*, 717 F.2d 1196, 1200 (9th Cir. 1983); 42 U.S.C. § 423(d)(1)(A).

United States District Court
Northern District of California

asking (1) whether the claimant is engaged in substantial gainful activity, (2) whether he has a severe impairment, (3) whether the impairment meets or equals a listed impairment, (4) whether, given his residual functional capacity, he can perform his past relevant work, and (5) whether he can perform other work in the national economy. The claimant bears the burden at the first four steps.[44]

### 3. Medical Opinions and Prior Administrative Medical Findings

For claims filed after March 27, 2017, the ALJ does not defer or give specific evidentiary weight to any medical opinion or prior administrative medical finding. She instead evaluates persuasiveness, with supportability and consistency as the most important factors, and must articulate how she considered both.[45] Supportability looks to the objective evidence and explanations the source itself presents; consistency measures the opinion against the evidence from other medical and nonmedical sources in the record.[46] The ALJ's evaluation (including a decision to discount an opinion) must be supported by substantial evidence, and the ALJ may not reach a finding by disregarding significant probative evidence or by mischaracterizing the record; treatment records must be read in the context of the overall diagnostic picture.[47]

## ANALYSIS

### 1. The Consultants' Hand-Control Limitation

The ALJ articulated both regulatory factors for the consultants' limitation to occasional operation of left-hand controls. On supportability, she found the limitation "somewhat supported by a recitation to the consultative examination . . . and the short lived positive Tinel's/Phalen's findings." On consistency, she found (incorporating her preceding discussion of the medical

---

[44] 20 C.F.R. § 404.1520(a)(4); *Ford*, 950 F.3d at 1148–49.

[45] 20 C.F.R. § 404.1520c(a), (b)(2); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[46] 20 C.F.R. § 404.1520c(c)(1)–(2).

[47] *Woods*, 32 F.4th at 787, 792; *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014), *superseded by statute on other grounds*; *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

evidence) that the positive findings "did not persist even a full 12 months and he had little in the way of even continued subjective complaints, let alone objective findings."[48] The question is whether substantial evidence supports that consistency finding. It does.

The plaintiff's principal argument is that the ALJ ignored corroborating evidence: the July 2020 cervical x-ray that Dr. Luu linked to the left-arm symptoms, and the plaintiff's continuing reports of left-arm and neck symptoms to Dr. Luu through April 2022.[49] The decision, read as a whole, did neither. The ALJ expressly acknowledged that the plaintiff "continued to report pain to Dr. Luu, with little evidence of objective findings into early 2022," and she explained why she gave those reports limited weight: "his reports between clinicians were inconsistent, with no mention of musculoskeletal symptoms at Valley Health and only vague mentions and little in the way of findings with Dr. Luu."[50] She likewise addressed the imaging, characterizing the cervical and lumbar findings as mild to moderate and the shoulder and knee findings as mild, and she addressed Dr. Luu's own reliance on the imaging when she evaluated his opinion, finding the imaging inconsistent with the level of limitation he assessed.[51] The ALJ did not mention the July 2020 film by date, but she was not required to discuss every piece of evidence, and characterizing a body of cervical imaging that includes moderate endplate spurring, anterior subluxation, and foraminal encroachment as "mild to moderate" is a rational reading, not a mischaracterization.[52]

The plaintiff's second argument — that the record "cannot accurately be described" as one of repeated denials because he simultaneously reported symptoms to Dr. Luu — fails for the same reason. An unacknowledged conflict would be a problem: an ALJ may not resolve an evidentiary conflict silently by citing only one side of it. But this ALJ acknowledged both sides and resolved the conflict expressly, finding the plaintiff's statements "inconsistent" between clinicians and

---

[48] AR 568–69.

[49] Pl.'s Br. – ECF No. 9 at 7–9, 12–13 (citing AR 416, 446, 448, 460, 541, 866).

[50] AR 567–68; *see* AR 571 (the plaintiff "denied numbness during treatment outside of the visits with Dr. Luu"); *Kaufmann*, 32 F.4th at 851 (courts review the ALJ's entire decision).

[51] AR 567–68, 571 (citing Exs. 1F/9; 3F/16–18; 4F/1–2, 10–11).

[52] *Lambert*, 980 F.3d at 1277; *cf. Ghanim*, 763 F.3d at 1164. The underlying films are described at Pl.'s Br. – ECF No. 9 at 7–8 (AR 460) and AR 566–67 (Ex. 3F/17–18).

crediting the review-of-systems denials at five visits over the "vague mentions" in Dr. Luu's notes. Weighing record conflicts of this kind is the ALJ's function, not the court's, and the resolution here is rational: statements to providers carry evidentiary weight regardless of an appointment's purpose, the denials spanned five visits over eleven months, and the treating notes on the other side of the ledger contained (on the ALJ's reading) few objective findings.[53]

The plaintiff's remaining arguments do not change the result. His invocation of Social Security Ruling 18-01p is inapposite: the ruling addresses how an ALJ establishes an onset date and compels no inference in evaluating opinion evidence.[54] His duration argument (that the twelve-month requirement attaches to the impairment, not to each clinical sign) is correct as far as it goes, but it does not describe what the ALJ did. She found the cervical degenerative disc disease and the diabetic neuropathy severe and imposed manipulative limitations on their account. The twelve-month observation went to whether the record established the disputed degree of limitation (occasional rather than frequent use) on the sustained basis a residual functional capacity must reflect, a pertinent question for a claim that itself requires twelve continuous months of disability. Roughly three months of documented signs, followed by denials, minimal complaints, and a return to constant-typing work, is a record on which a reasonable adjudicator could decline to project the stricter limitation across the period.[55] Nor does the directional agreement of the other opinions (Dr. Kenny's stricter manipulative limits and Dr. Luu's no-repetitive-computer-work restriction) compel a different consistency finding. The ALJ discounted all three sources' left-hand restrictions for the same record-based reasons, so their shared premise (persistent left-hand deficits) rises or falls together. Consistency among opinions the ALJ permissibly found unpersuasive does not bootstrap any of them into persuasiveness. And the opinions are not congruent in any event: the consultants themselves found the plaintiff capable of frequent left

[53] *Smartt*, 53 F.4th at 499; *Winans*, 853 F.2d at 644–45; AR 567–68, 571. That one cited denial (March 2021) predates the April 22, 2021, consultative examination and does not undermine the finding; the remaining four postdate it. Comm'r's Br. – ECF No. 11 at 3.

[54] SSR 18-01p, 2018 WL 4945639; Pl.'s Br. – ECF No. 9 at 12–13; Comm'r's Br. – ECF No. 11 at 6.

[55] 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 404.1545(b)–(c); SSR 96-8p; AR 560, 565, 568–69.

handling, fingering, and feeling (the very limitations the ALJ adopted), which is inconsistent with Dr. Kenny's occasional-handling and no-fingering-or-feeling limits, and Dr. Luu's letters say nothing about frequency.[56] The parties' dispute about the undated progress note (the plaintiff dates it to July 10, 2020, and the Commissioner, like both ALJ decisions, treats it as undated) is immaterial: dated to July 2020, the note would extend the window of positive signs, but it would not alter the post-examination record of denials, minimal complaints, and minimal findings on which the consistency determination rests.[57] The ALJ's evaluation of the prior administrative medical findings therefore stands, and with it the residual functional capacity.

In reaching this conclusion, the court considered the opposing argument that the ALJ's consistency finding fails on its own terms. The decision acknowledges that the plaintiff "continued to report pain to Dr. Luu . . . into early 2022," yet the operative finding rejects the hand-control limitation because he had "little in the way of even continued subjective complaints," a tension the decision does not reconcile. And discounting reports made to Dr. Luu because they were made to Dr. Luu comes close to circularity.[58] On this reading, the corroborating objective anchor (the July 2020 cervical x-ray showing foraminal encroachment, which Dr. Luu tied to the left-arm symptoms and which the decision never specifically engages) together with symptom reports spanning January 2020 into April 2022, makes the short-lived-findings rationale arguably an incomplete account of the record rather than a resolution of it.[59] The error arguably would not be harmless: the vocational expert testified that the limitation precludes the past work and that no skills transfer, and the Commissioner does not dispute that Rule 202.06 would then direct a finding of disability.[60] The remedy would be a remand for further proceedings, not benefits: the conflict between the plaintiff's reports to Dr. Luu and his denials elsewhere would remain for the

---

[56] 20 C.F.R. § 404.1520c(c)(2); AR 87, 89, 105–07, 568–71; Comm'r's Br. – ECF No. 11 at 4–5; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (an ALJ may translate a source's restrictions into concrete functional terms).

[57] AR 24, 421, 564; Pl.'s Br. – ECF No. 9 at 8, 12; Comm'r's Br. – ECF No. 11 at 3, 5–6.

[58] AR 567–69; *Ghanim*, 763 F.3d at 1164.

[59] AR 416, 446, 448, 460, 541, 866; Pl.'s Br. – ECF No. 9 at 7–9, 12–13.

[60] AR 602–03, 605; 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06; *Molina*, 674 F.3d at 1115.

agency to resolve; the vocational experts across the two hearings gave opposite answers to the hand-controls hypothetical; and the record (including the unexplained return to the same constant-typing job on July 1, 2022, with little intervening treatment, and the plaintiff's mid-period statement that he was applying for jobs) arguably creates doubt that he was disabled.[61]

Adopting the second approach would result in remand under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order, not an award of benefits. The court sets out the alternative analysis because it is the closest issue in the case. The qualifier outside of the visits with Dr. Luu and the vague mentions resolves the issue rationally and thus the court upholds the ALJ's decision. To hold otherwise impermissibly would substitute the court's judgment for the ALJ's.[62]

**2. Dr. Kenny's Opinion**

The ALJ found Dr. Kenny's opinion "persuasive only in part." She adopted the postural, lift-carry, and left-overhead-reach limitations, and she rejected the stand-walk, push-pull, and left-hand manipulative limitations for three reasons: the positive findings did not persist beyond a few months after the examination; the plaintiff denied numbness and weakness at later visits; and the plaintiff returned to the same occupation (one involving frequent use of the upper extremities and self-described constant typing) despite little evidence of intervening treatment.[63] The first two grounds are sound for the reasons in Part 1. The third is an independent ground, the plaintiff's opening brief does not challenge it, and it would sustain the finding on its own.

[61] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–105 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1020–21 (9th Cir. 2014); *Strauss v. Comm'r of Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *Brown-Hunter*, 806 F.3d at 495; AR 29–30, 36–37 (2022 expert: past work available with occasional left-hand controls), 559, 566–67 (Ex. 5F/2), 571, 602–03 (2024 expert: opposite). If a hand-control limitation is adopted on remand, conflicts in the vocational testimony and with the DOT must be identified and resolved. SSR 00-4p.

[62] *See supra* (recounting the standard of review).

[63] AR 569–71.

Arguments not raised specifically and distinctly in an opening brief are forfeited.[64] The plaintiff's brief disputes the ALJ's characterization of the clinical findings and the denials, but it says nothing about the ALJ's reliance on his return to work, a point the Commissioner's brief makes and the plaintiff has not answered.[65] The ground is also legally permissible and factually supported. An ALJ may consider a claimant's work activity in evaluating his claim and the opinion evidence, and the ALJ found (with record support) that the plaintiff resumed the same constant-typing occupation on July 1, 2022, at full pre-onset earnings, with little evidence of intervening treatment and no documented medical improvement to explain the change.[66] The work postdates the claimed closed period, but that is what gives it probative force here: Dr. Kenny opined that the plaintiff could never finger or feel with the left hand, and the inference that those near-total restrictions overstated his capacity is a rational one where he resumed constant typing the day after the period closed without any documented treatment in between. Because the unchallenged ground independently supports the persuasiveness finding, any error in the other grounds would be harmless as to Dr. Kenny's opinion.[67]

### 3. The Closed Period

The plaintiff's remaining argument — that the ALJ "should have adjudicated" a closed period — fails on the decision's text. The ALJ acknowledged on the record that the plaintiff sought to amend to a closed period ending June 30, 2022, stated in the decision that she was "adjudicating the entire period through the date of this decision," and found the plaintiff not disabled "from January 11, 2020, through the date of this decision."[68] A finding of no disability at any time within

[64] *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (claimant forfeited an argument by not challenging the ALJ's findings on the point).

[65] *See* Pl.'s Br. – ECF No. 9 at 4–11; Comm'r's Br. – ECF No. 11 at 4.

[66] *Ford*, 950 F.3d at 1156; *Nadon*, 145 F.4th at 1136–38; AR 559, 570–71.

[67] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115.

[68] AR 557, 573, 585.

United States District Court
Northern District of California

the period necessarily rejects every closed period within it. The authorities the plaintiff cites establish that closed-period benefits are available on a proper showing, not that this record compelled the showing.[69] Because the ALJ's evaluation of the opinion evidence stands, the residual functional capacity, the step-four finding, and the nondisability determination stand with it, and the court does not reach the parties' arguments about the choice of remedy.[70]

## CONCLUSION

The court affirms the Commissioner's final decision and denies the plaintiff's request for a remand. This resolves ECF Nos. 9 and 11.

**IT IS SO ORDERED.**

Dated: September 13, 2026

LAUREL BEELER
United States Magistrate Judge

[69] *Attmore*, 827 F.3d at 873–74; *Van Horn*, 717 F.2d at 1200; Pl.'s Br. – ECF No. 9 at 6.

[70] *See* Pl.'s Br. – ECF No. 9 at 10–11, 14–15; Comm'r's Br. – ECF No. 11 at 6–8.